```
                    IN THE UNITED STATES DISTRICT COURT
                        FOR THE DISTRICT OF MARYLAND


GARDEN CITY BOXING CLUB, INC.      :
                                   :
v.                                 :
                                   :  Civil No. WMN-06-2349
CALA, INC., t/a GUNPOWDER          :
RAPIDS BAR, et al.                 :
                                   :
```

**MEMORANDUM**

Before the Court is the motion of Plaintiff, Garden City Boxing Club, Inc., for entry of a judgment by default against Defendants, Cala, Inc., t/a Gunpowder Rapids Bar and Maryanna Cala. Paper No. 11. Upon a review of the pleadings and the applicable case law, the Court determines that default judgment will be entered against Defendants in the amount of $4,000, plus attorney's fees and costs.

## I.  FACTS

Plaintiff Garden City Boxing Club, Inc. paid for and was granted the exclusive rights to distribute the *Oscar De La Hoya v. Shane Mosley II Super Welterweight Championship Fight Program*, including all of the under-card bouts and fights encompassed in the television broadcast of the event, which took place on September 13, 2003 (hereinafter referred to as the "Program"). Plaintiff then entered into sublicensing agreements with various commercial entities in the State of Maryland, allowing them to publicly exhibit the Program to their patrons. Defendant Cala,

Inc., t/a Gunpowder Rapids Bar[1], a small bar and restaurant in Kingsville, Maryland, did not contract with plaintiff for the rights to exhibit the Program.

The satellite signal that transmitted the Program was encrypted and made available only to Plaintiff's customers.  On September 13, 2003, Roni Pohl, an investigator hired by Plaintiff, observed the unlawful exhibition of the Program at the Gunpowder Rapids Bar.  Pohl states that she entered the restaurant at 9:45 p.m., without paying a cover charge, and observed three television sets on the top shelf behind the bar broadcasting the Program.  According to Pohl, there were between 28 and 31 people present in the establishment at the time, although the maximum capacity is approximately 100 people.

Plaintiff filed this action on September 11, 2006, alleging violations of the Federal Communications Act of 1934, § 605, and The Cable & Television Consumer Protection and Competition Act of 1992, § 553.[2]  Defendants failed to answer or otherwise respond to the complaint.  Plaintiff then moved for entry of default pursuant to Fed. R. Civ. P. 55 on October 13, 2006.  On December 5, 2006, the Clerk of this Court entered default against Defendants.  Plaintiff has now moved for entry of default

---

[1] Plaintiff also named Maryanna Cala, one of the co-owners of Cala, Inc., as a defendant.

[2] Plaintiff also included in the complaint a claim for the tort of conversion but makes no mention of this claim in its motion for default judgment.  Because Plaintiff can recover under 47 U.S.C. § 605, the Court does not deem it necessary to evaluate any additional recovery under this claim.

judgment in the amount of $151,500.

## II. DISCUSSION

### A. Liability

Once a default is entered, a defendant is deemed to have admitted all of the plaintiff's well-pleaded allegations of fact as to liability. Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001) (quoting Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)); DIRECTV, Inc. v. Galasso, No. 3:04CV00055, 2005 WL 483157, at *1 (W.D. Va. Feb. 24, 2005).  Therefore, in a default judgment proceeding, a court must consider "whether the well-pleaded allegations in a [plaintiff's] complaint support the relief sought in [the] action." Ryan at 780.

Here, the allegations of Plaintiff's complaint establish Defendants' liability under 47 U.S.C. § 553 and 47 U.S.C. § 605. Section 553 provides that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator . . ." 47 U.S.C. § 553(a).  Section 605 provides that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish . . . the contents . . . of such intercepted communication." 47 U.S.C. § 605(a).  Section 605 has been interpreted to apply to the interception and descrambling of cable communications originating as satellite transmissions. Kingvision Pay-Per-View v. Palaguachi, No. 06-CV-1509, 2007 WL 42994, at *2 (E.D.N.Y.

3

Jan. 3, 2007) (citing Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 131-133 (2nd Cir. 1996)).  Plaintiff alleges that Defendants intercepted its satellite signal and then broadcasted the Program through a cable box without authorization.  Compl. ¶ 12.  Defendants' alleged conduct, which is deemed admitted, thus violated 47 U.S.C. §§ 553 and 605.

### B.  Damages

While a party's default is deemed to constitute admission of all well-pleaded allegations of liability, it is not considered an admission of allegations relating to damages.  Greyhound Exhibitgroup, 973 F. 2d at 158; J&J Sports Productions, Inc. v. Lopez, No. 05-CV-5799, 2006 WL 2355851, at *2 (E.D.N.Y. June 8, 2006).  The Court has discretion in awarding damages and a determination of damages may be made based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence.  J&J Sports, 2006 WL 2355851, at *2; see 47 U.S.C. §605(e)(3)(C)(i)(II) (providing for the award of damages within the specified range "as the Court considers just.")  Here, Defendants have not submitted any opposition to the papers submitted by Plaintiff and therefore a hearing is not warranted.  See J&J Sports, 2006 WL 2355851, at *2 (noting that generally an evidentiary proceeding is needed so that the court can ensure that there is a basis for the damages sought before entering a default judgment, but that this proceeding is not warranted when there are no papers submitted by a defendant).

It is well established that when a party brings suit under

4

both Section 553 and Section 605, damages cannot be awarded under both statutes.[3]  Int'l Cablevision, 75 F.3d at 129; Garden City Boxing Club, Inc. v. 704 Nostrand Corp., No. 06-CV-4875, 2007 WL 608238, at *2 (E.D.N.Y. Feb. 23, 2007); Garden City Boxing Club, Inc. v. Polanco, No. 05 Civ. 3411, 2006 WL 305458, at *5 (S.D.N.Y. Feb. 7, 2006).  When a party alleges damages under both statutes, the Court should award damages under Section 605 because the range of statutory damages available to the aggrieved party is higher and there is a mandatory provision for attorney's fees and costs.  Polanco, 2006 WL 305458, at *5; see 47 U.S.C. § 605(e)(3)(B)(iii) (requiring that the court direct recovery of "full costs, including awarding reasonable attorney's fees").

A claimant who has established liability under Section 605(a) may elect to recover either actual damages or statutory damages.  47 U.S.C. § 605(e)(3)(C)(i)(I).  Garden City has elected the latter because, as is generally the case, there is no evidence available of actual damages.  See, e.g., Garden City Boxing Club, Inc. v. Bello, No. CV-05-1300, 2005 WL 2496062, at *2. (E.D.N.Y. Sept. 20, 2005).  The range for statutory damages is $1,000 to $10,000 per violation.  47 U.S.C. § 605(e)(3)(C)(i)(II).  In addition, where a violation was "willful" and "for purposes of direct or indirect commercial

---

[3]  While plaintiff correctly notes that in the Ninth Circuit, a few courts have elected to award damages under both statutes, the majority of courts in other circuits, including the Fourth Circuit, have found that a party can only recover under a single section.

5

advantage or private financial gain," the court can award enhanced damages of up to an additional $100,000 for each violation. See 47 U.S.C. § 605(e)(3)(C)(ii). The statute commits to the court's discretion the determination of the specific amount within the statutory ranges that should be awarded. 704 Nostrand Corp., 2007 WL 608238, at *2.

    1. Statutory Damages

Courts have developed two approaches for determining statutory damages. Some courts have awarded flat amounts when calculating damages. J&J Sports, 2006 WL 2355851, at *3; Polanco, 2006 WL 305458, at *5; DIRECTV. Inc. v. Carrera, No. 6:03 CV 00093, 2005 WL 2010157, at *4 (W.D. Va. Aug. 19, 2005); Palaguachi, 2007 WL 42994, at *3. Other courts have awarded damages based on a fixed amount per patron. Kingvision Pay-Per-View, Ltd. v. Admiral's Anchor, Inc., 172 F. Supp. 2d 810, 812 (2001); Entertainment by J&J, Inc. v. Gridiron, Inc., 232 F. Supp. 2d 679, 681 (S.D. W. Va. 2001); Bello, 2005 WL 2496062, at *3; Garden City Boxing Club, Inc. v. Salcedo, No. 04 Civ. 5027, 2005 WL 2898233, at *2 (S.D.N.Y. Nov. 3, 2005).

Because the only evidence available in this action establishes that there was a single violation, it is appropriate to use the per patron method to calculate damages. See Bello, 2005 WL 2496062, at *3. While Plaintiff did not provide information regarding the fee for sub-licensing, other reported cases involving Garden City Boxing show that the company has charged $20 per patron in commercial establishments to broadcast

the same or similar boxing programs.  Id.  Courts in this circuit have calculated damages under § 605 by calculating the defendant's maximum occupancy and multiplying it by the applicable licensing fee.  Gridiron, Inc., 232 F. Supp. 2d at 681.[4]  Here, the investigator's report estimated that the establishment's maximum occupancy was 100.  The Court concludes that an award of $2,000 - reached by multiplying the $20 per patron estimated sub-licensing fee by the maximum occupancy - is appropriate here.

### 2. Enhanced Damages

Plaintiff also seeks enhanced damages, contending that defendant willfully violated the statute for commercial advantage or private financial gain.  See 47 U.S.C. § 605(e)(3)(C)(ii). Willfulness is defined as "disregard for the governing statute and an indifference for its requirements."  Bello, 2005 WL 2496062, at *4 (quoting Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 126-127 (1985)).  Defendants unquestionably committed a willful violation of the statute, as they intercepted and broadcasted the Program without authorization and could not have done this without using an illegal device or misrepresenting the nature of their commercial establishment to the provider. See J&J Sports, 2006 WL 2355851, at *4.

---

[4] In Gridiron, Inc., the court also then multiplied this figure by five "to take into consideration the willfulness of the Defendant's statutory violation."  232 F. Supp. 2d at 681.  This Court finds that the willfulness of the violation is better addressed by a separate determination of enhanced damages.

7

In evaluating whether a defendant's willful conduct justifies increased damages, the Court should consider the following factors: (1) repeated violations over an extended period of time; (2) substantial unlawful monetary gains; (3) advertising of the broadcast; and (4) charging an entrance fee or premiums for food and drinks.  Bello, 2005 WL 2496062, at *4.  Here, the Court notes that there is no evidence Defendants advertised the exhibition of the Program or charged patrons to enter the establishment and view the Program.  Further, there is no evidence that Defendants' exhibition of the Program resulted in great financial gain.

One of the primary reasons courts award enhanced damages is to deter future unlawful conduct from would-be infringers.  See, e.g., Polanco, 2006 WL 305458, at *5; Kingvision Pay-Per-View, Ltd. v. Olivares, No. 02 Civ. 6588, 2004 WL 744226, at *3 (S.D.N.Y. Apr. 5, 2004).  The Court also considers whether the damages are proportionate to the size of the establishment, as a small business needs less monetary deterrence to prevent future violations.  Olivares, 2004 WL 744226, at *4.  The Court can also consider factors such as the financial resources of the defendant and the burden that a damage award would impose on the defendant. 704 Nostrand Corp., 2007 WL 608238, at *3; Palaguachi, 2007 WL 42994, at *3.  Here, the Gunpowder Rapids Bar is a rather small establishment, with only eight to ten tables.  Aside from a notation by the investigator that the establishment rates "Good," Plaintiff provides no information regarding the financial status

of Defendant.  While Defendants willfully committed the violation, when considering the factors described <u>supra</u>, the Court finds that there is no need to impose extraordinarily large monetary damages in order to deter Defendants and other establishments similarly situated from engaging in this illegal conduct.  <u>See</u> <u>704 Nostrand Corp.</u>, 2007 WL 608238, at *4 (noting that seeking the maximum amount of damages from a defendant without the financial capability to afford a high statutory award is unjust); <u>Polanco</u>, 2006 WL 305458, at *5 (reasoning that although the amount of damages should be an adequate deterrent, the violation may not be so serious as to impose damages that would drive the defendant's establishment out of business).  For the foregoing reasons, the Court finds that $2,000 in enhanced damages is sufficient to deter Defendants and other small establishments from illegally broadcasting programs.[5]

**C.  Costs and Fees**

Section 605 mandates the award of reasonable attorneys' fees

---

[5] <u>See</u>, <u>e.g.</u>, <u>Garden City Boxing Club v. Salcedo</u>, No. 04 Civ. 5027, 2005 WL 2898233 (S.D.N.Y. Nov. 3, 2005) (quoting <u>Cablevision Systems New York City Corp. v. Jose Cateras *d/b/a Acogedor Cibao Rest.*</u>, 97 Civ. 7199(LAK)(HBP), at ¶28 (S.D.N.Y. May 1, 1998)) (awarding less damages than requested by plaintiff and rejecting enhanced damages even though defendant's violation was serious and intentional, because "the defendant's establishment is small and [its] financial gain was minimal"). In contrast, cases where courts have awarded higher enhanced damages have been when there is proof of the defendants' repeated violations or financial gain.  <u>See</u>, <u>e.g.</u>, <u>Polanco</u>, 2006 WL 305458, at *3 (awarding higher enhanced damages of $10,000 because the defendant had advertised the event); <u>Bello</u>, 2005 WL 2496062, at *4 (noting that plaintiff is entitled to $10,000 in enhanced damages because the defendant made a greater profit from selling food and drink during the pirated match).

and costs to a prevailing party.  See 47 U.S.C. § 605(e)(3)(B)(iii).  Plaintiff has not submitted any records or affidavits detailing attorney's fees or costs.  Plaintiff shall do so within ten days.[6]

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Default Judgment will be granted.  Plaintiff will be awarded: (1) statutory damages in the amount of $2,000; (2) enhanced damages in the amount of $2,000; and (3) reasonable costs and attorney's fees, upon a timely receipt of records detailing such costs and fees.  A separate order will follow.

                                              /s/
                                    William M. Nickerson
                                    Senior United States District Judge

Dated: June 7, 2007

---

[6] The Court notes that Plaintiff is only entitled to reasonable attorney's fees, J&J Sports, 2006 WL 2355851, at *4-5, and that here, reasonable attorney's fees are likely to be minimal.  Although Plaintiff's motion gives the impression of substantial legal analysis, it is quite clear that the pleading was largely pasted without review or revision from a pleading originally filed somewhere in the Ninth Circuit as the pleading cites Ninth Circuit authority as controlling.  See, e.g., Pl.'s Mem. at unnumbered page 5 (referring to case from Northern District of California as a decision of a court "in this circuit").